## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA
## COURT FILE NO.: 0:10-CV-00606-JJG

| | |
|---|---|
| Robert Reich and others in similar situation,<br><br>Plaintiff,<br><br>vs.<br><br>UNITY ONE CREDIT UNION, as successor by merger to GCM Federal Credit Union,<br><br>Defendant. | **PLAINTIFF'S MEMORANDUM IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL** |

## INTRODUCTION

Plaintiff Robert Reich filed suit against Defendant Unity One Credit Union, as successor by merger to GCM Federal Credit Union ("Unity One") alleging that Defendant operated an automated teller machine ("ATM") in violation of the Electronic Funds Transfer Act, 15 U.S.C. § 1693, *et seq*. ("EFTA" or "Act"). Specifically, Plaintiff alleged that Defendant failed to post the statutorily-mandated notice on the face of its ATM, located at 101 Highway 96, Vadnais Heights, Minnesota, to notify users that it would charge non-members a $2.00 fee. *See* 15 U.S.C. § 1693b(d)(3)(B).

After several rounds of arms'-length negotiations following written Discovery, and after the exchange of certain information relevant to class certification, the parties

1

reached a class-wide settlement[1], which provides for the following relief:

    A.    Unity One will pay a class settlement fund of $7,200.00; the $7,200.00 will be distributed on a *pro rata* basis to all class members who send in claim forms, each claimant being eligible to receive up to the maximum statutory damages amount of $1,000.00;

    B.    Unity One will pay Robert Reich $1,500.00 as damages and for his services as the class representative; and

    C.    Unity One agrees not to oppose Class Counsel's request for reasonable attorneys' fees and costs, up to $26,000.00.

Because the Defendant's transaction logs indicate there are 408 transactions at issue, and approximately 37 individuals who may be class members, even if every class member claimed in, they would still each receive a substantial sum, approximately $202.70, and therefore, the settlement should be approved as fair, adequate, reasonable and in the best interests of the Class Members and the following class should be certified for settlement purposes:

    All persons who, from March 3, 2009 through March 15, 2010 were charged a transaction fee for the use of ATM number 631780, located at 1010 Highway 96, Vadnais Heights, MN 55127.

## LEGAL DISCUSSION

## I.    THE REQUIREMENTS FOR CERTIFICATION OF A SETTLEMENT CLASS ARE MET.

The class action vehicle was created to promote a fair and expeditious resolution for claims of a large number of people who claim to have been injured by the same

---

[1] The fully executed Release and Settlement Agreement with Exhibits A – F are attached to Lyons Declaration Exhibit 2.

occurrence, practice or procedure.  The alternative to class certification – the prosecution of multiple individual claims – would result in logistical difficulties, a waste of judicial resources, and the elimination of an orderly and reasonable process to resolve the factual and legal issues underlying this case.

The plain language of EFTA, like the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), and the Truth in Lending Act 15 U.S.C. § 1640 *et seq.* ("TILA"), demonstrates that class actions are an appropriate procedural device because class-wide statutory damages are specifically contemplated.  Class remedies are "an important encouragement to the voluntary compliance which is so necessary to insure nationwide adherence to uniform disclosure."[2]  Further, "[t]he possibility of class-action exposure is essential to the prophylactic intent of the Act, and is necessary to elevate truth-in-lending lawsuits 'from the ineffective 'nuisance' category to the type of suit which has enough sting to insure that management will strive with diligence to achieve compliance."[3]

The purpose of EFTA is to provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund transfer systems.  *See* 15 U.S.C. § 1693(b).  "The primary objective of EFTA, however, is the provision of . . . consumer rights."  *Id.*  EFTA is a strict liability statute, and makes no mention of any

---

[2] SENATE COMM. ON BANKING, HOUSING AND URBAN AFFAIRS, TRUTH IN LENDING AMENDMENTS, S. Rep. No. 93278, 93d Cong., 1st Sess. 14-15 (1973).

[3] *Bantolina v. Aloha Motors, Inc.*, 419 F. Supp. 1116, 1120 (D. Hawaii 1976) (*citing* Federal Reserve Board, 1972 Annual Report on Truth in Lending).

requisite scienter.[4]  As EFTA is broadly drafted and designed to protect consumers, it must be read in such a way to effectuate this purpose.

Under the Federal Rules of Civil Procedure, a party seeking class certification must first satisfy each of four prerequisites under Rule 23(a), plus one of three conditions for maintaining a class action under Rule 23(b).  In general, Rule 23 is to be liberally construed in order to enhance the use of class actions as a means of vindicating the rights of absent class members who are unable to personally prosecute actions.  *See* Am Jur. 2d § 1853.  Furthermore, close or doubtful cases should be resolved in favor of class certification.  *Esplin v. Hirschi,* 402 F.2d 94, 99 (10th Cir. 1968); *Groover v. Michelin North America, Inc.*, 187 F.R.D. 662, 666 (M.D. Ala. 1999); *Jackson v. Motel 6 Multipurposes, Inc.,* 175 F.R.D. 337, 340 (M.D. Fla. 1997).

As demonstrated below, all requirements necessary to finally certify the Settlement Class are satisfied herein, and the parties agreed that, for settlement purposes, the Rule 23 factors are met in this case.

### A.    Rule 23(a)(1) -- Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."  *In re Federal Skywalk Cases,* 680 F.2d 1175, 1178 (8th Cir. 1982).  The standard of impracticability does not mean impossibility, but only that it would be difficult or inconvenient to join all members of the class.  *Thinesen v. JBC Legal Group,*

---

[4] *Burns v. First Am. Bank*, No. 04 C 7682, 2006 U.S. Dist. LEXIS 92159, *19 (N.D. Ill. Dec. 19, 2006) (*citing Bisbey v. D.C. National Bank*, 793 F.2d 315, 318-19 (D.C. Cir. 1986)).

2005 WL 2346991 *7 (D. Minn. 2005), *citing Jenson v. Eveleth Taconite Co.*, 139 F.R.D. 657, 659-60 (D. Minn. 1991).

Number is but one of several considerations relevant to the joinder impracticability issue.   In addition to the size of the class, the Court may also consider the: 1) nature of the action; 2) the size of the individual claims; 3) the inconvenience of trying individual suits; and 4) any other factor relevant to the practicability of joining all the putative class members.  *Carpe v. Aquila, Inc.*, 224 F.R.D. 454, 457 (W.D. Mo. 2004) (*citing Paxton v. Union Nat'l Bank*, 688 F.2d 552, 559 (8th Cir. 1982)).

Courts generally have not established a minimum number required to satisfy the numerosity requirement.  "The difficulty inherent in joining as few as 40 class members should raise a presumption that joinder is impracticable, and the plaintiff whose class is that large or larger should meet the test of Rule 23(a)(1) on that fact alone."  *Carpe,* 224 F.R.D. at 457; *see also Lockwood Motors, Inc. v. Gen. Motors Corp.*, 162 F.R.D 569, 574 (D. Minn. 1995).  *See Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D. Ill. 1986) (29 member class sufficient); *Rosario v. Cook County*, 101 F.R.D. 659, 661 (N.D. Ill. 1983) (20 member class sufficient); *Mathers v. Northshore Mining Co.*, 217 F.R.D. 474, 484 (D. Minn. 2003) (*citing Talbott v. GC Services Ltd. Partnership*, 191 F.R.D. 99, 102 (W.D. Va. 2000) (stating that where the class is twenty-five or more, joinder is usually presumed impracticable)).

In this case, because there are 408 transactions at issue and 37 separate ATM users, numerosity exists for purposes of Rule 23(a)(1).

### B.    Rule 23(a)(2) -- Commonality

In motions for class action certification generally, the commonality requirement is easily satisfied and imposes only a "light burden" on Plaintiff.  *See* Newberg § 310 at 3-50.  "Not every question of law or fact need be common to the class to satisfy the requirements of Rule 23(a)(2).  Instead, Rule 23(a)(2) requires only that the course of conduct giving rise to a cause of action affects all class members, and that at least one of the elements of that cause of action is shared by all class members."  *Lockwood*, 162 F.R.D. at 575.  Commonality is not required on every question raised.  *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995).  One court has explained:

> "When the claim arises out of the same legal or remedial theory, the presence of factual variations is normally not sufficient to preclude class action treatment." *Donaldson v. Pillsbury Co.*, 554 F.2d 825, 831 (8th Cir. 1977), *cert. denied*, 434 U.S. 856 (1977).  "Not every question of law or fact need be common to the class to satisfy the requirements of 23(a)(2)." *Lockwood Motors, Inc. v. General Motors Corp.*, 162 F.R.D. 569, 575 (D. Minn. 1995).  Rather, Rule 23(a)(2) is easily met in most cases because it "requires only that the course of conduct giving rise to a cause of action affects all class members, and that at least one of the elements of that cause of action is shared by all class members." *Id.*

*Egge v. Healthspan Services Co.,* 208 F.R.D. 265, 268 (D. Minn. 2002).

In this case, Plaintiff alleges that Defendant violated EFTA by failing to post a fee notice on its ATM before charging him a fee to use the machine.  Plaintiff's claim is universal and identical to the experience of the settlement class members to whom Defendant also charged a transaction fee while no fee notice was posted on the ATM.  Although a common question of either law or fact can be used to support a class action,

both exist here. The common questions of fact for the class are: (1) whether Defendant posted notice that it would charge a transaction fee for use of the ATM; and (2) whether Defendant charged a transaction fee for use of the ATM when no fee notice was posted. The common question of law is whether Defendant's failure to post a fee notice while charging a transaction fee violated 15 U.S.C. § 1693b(d)(3) and 12 CFR § 205.16. Because there is a common nucleus of operative facts as to all the class members' ATM transactions, the commonality requirement of Rule 23(a)(2) is satisfied.[5]

### C.    Rule 23(a)(3) -- Typicality

In general, typicality will be satisfied "when the claims of the named plaintiffs emanate from the same event or are based on the same legal theory as the claims of the class members." *Egge*, 208 F.R.D. at 269 (*citing Lockwood*, 162 F.R.D. at 575). Typicality is "fairly easily met so long as other class members have claims similar to the named plaintiff." *Alpern v. UtiliCorp United, Inc.,* 84 F.3d 1525, 1540 (8th Cir. 1996); *see also DeBoer,* 64 F.3d at 1174. "Typicality and commonality are closely related, and typicality is generally found where the commonality requirement has been met." *Buycks-Roberson v. Citibank Fed. Sav. Bank*, 162 F.R.D. 322, 333 (N.D. Ill. 1995). Factual variations in the individual claims will not normally preclude certification if the claim

---

[5] *Burns*, 2006 U.S. Dist. LEXIS 92159 at *25 (finding that "[t]he proposed class is based on a common nucleus of operative facts - that is, Defendant charged each class member $2.50 for using ATMs S1A5260 and S1A5261 during the Class Period. Class members also share a common interest in the question of whether Defendant's fee notices violated EFTA. Because class members share common questions of law and fact, the commonality prong of Rule 23(a) is met.")

arises from the same course of conduct as the class claims. *Alpern,* 84 F.3d at 1540; *accord Paxton*, 688 F.2d at 561.

Here, the representative Plaintiff's claims cannot be factually distinguished from the claims of the settlement class members, because each claim arises from identical conduct, *i.e.*, Defendant's failure to post a fee notice on the ATM while charging a transaction fee.  Each claim is also based on the same legal theory, whether Defendant violated § 1693b(d)(3) of EFTA.[6]   Accordingly, Plaintiff has met the typicality requirement of Rule 23(a)(3).

### D.     Rule 23(a)(4) -- Adequacy of Representation

Whether the representative will "fairly and adequately protect the interests of the class" depends on "whether: 1) the class representatives have common interests with the members of the class, and 2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel." *Paxton,* 688 F.2d at 562-63.

A class representative will generally be found to have a common interest with the members of the class when the representative has "an economic stake in the outcome of [the] litigation." *Egge,* 208 F.R.D. at 269, *quoting Wilborn v. Dun & Bradstreet Corp.,* 180 F.R.D. 347, 355 (N.D. Ill. 1998)).  This economic stake exists even when the named plaintiff stands to recover only statutory, and not actual damages, "as long as the class members' injuries arose out of the same violative conduct." *Id.* at 270, *citing Keele v.*

---

[6] *Burns*, 2006 U.S. Dist. LEXIS 92159 at *26 (finding typicality for EFTA class); *see also Flores v. Diamond Bank*, 2008 U.S. Dist. LEXIS 91097, *4 (N.D. Ill. Nov. 7, 2008) (same).

*Wexler,* 149 F.3d 589, 594 (7th Cir. 1997); *Bartlett v. Heibl*, 128 F.3d 497, 499 (7th Cir. 1997).

The second inquiry under Rule 23(a)(4) involves both whether the representative plaintiff is adequately responsible to represent the class, and whether his attorneys are sufficiently experienced in class action litigation and consumer issues.

First, no conflict or antagonism exists between Plaintiff and the settlement class members given the identical nature of their claims and injury.  Second, Plaintiff supports a settlement which will recover monies for him and the proposed class.  Third, Plaintiff has hired attorneys who are active practitioners in consumer class cases with experience, diligence, and commitment to this litigation and to protect the interests of the class. Therefore, Plaintiff and his counsel meet the adequacy requirements. *(See Lyons Decl. at ¶4 and Raphael Decl. at ¶9 & 10.)*

### E.    Rule 23(b)(3)

Rule 23(b)(3) requires a showing "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to the available methods for the fair and efficient adjudication of the controversy."

A common question of law or fact predominates when there is a common factual link between all the class members and the defendant for which the law provides a remedy.[7]  "The commonality requirement of Rule 23(a)(2) and the predominance

---

[7] *See Daley v. Provena Hospitals*, 193 F.R.D.526, 529 (N.D. Ill. 2000).

requirement of Rule 23(b)(3) are closely related and a finding of one will generally satisfy the other."[8]

Here, common questions predominate for the class because Defendant's failure to post a fee notice on the ATM while still charging a transaction fee to non-customer users of the ATM is <u>identical</u> with regard to all settlement class members.   Because the question of fact (whether Defendant posted a physical fee notice on the ATM) and the question of law (whether the failure to post such notice violated EFTA) would result in liability against Defendant, the questions of fact and law common to the members of the class predominate over any questions affecting only individual members.[9]

Factors considered when assessing superiority include: (a) the interest of individuals in controlling the prosecution of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by class members; (c) the desirability of concentrating the litigation in the particular forum; and (d) the difficulty likely to be encountered in the management of the class action.[10]   Further, when the

---

[8] *See Clark v. Retrieval Masters Creditors Bureau*, 185 F.R.D. 247, 250 (N.D. Ill. 1998) (*citing Villareal v. Snow*, No. 95 C 2484, 1996 U.S. Dist. LEXIS 667, *15 (N.D. Ill. January 16, 1996)).

[9] *Burns v. First Am. Bank*, 2006 U.S. Dist. LEXIS 92159 at *31-32 ("Likewise, any defense raised by Defendant under § 1693m(c) will depend on common issues involving Defendant's intent and its maintenance of procedures reasonably adapted to avoid a violation.   Accordingly, questions common to the class predominate over any questions affecting only individual members." *See also Flores*, 2008 U.S. Dist. LEXIS 91097 at *8 (same).

[10] *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 564 (6th Cir. 2007).

potential recovery is small, class actions are superior to individual suits because small recoveries do not provide an incentive to bring individual suits.[11] Finally, "courts hold that claims dealing with the legality of standardized . . . conduct are generally appropriate for resolution by means of a class action because the . . . conduct is the focal point of the analysis."[12]

Here, a class action is the superior and most efficient means of assessing the legality of Defendant's standardized conduct (failing to post a fee notice in violation of EFTA), because Plaintiff alleges that Defendant acted wrongfully in a manner universal to all putative class members.[13] Additionally, the small recovery available suggests little interest in individuals controlling the litigation themselves, in the unlikely event class members are even aware of their claims. There are also no concerns about concentrating the litigation in this forum because Defendant's ATM is located in Minnesota.

As a result of the above, the factors under Rule 23(b)(3) have been established.

## II. THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE AND SHOULD BE GRANTED FINAL APPROVAL BY THIS COURT.

---

[11] *Id.* at 564; *see also In re Folding Carton Antitrust Litig.*, 75 F.R.D. 727, 732 (N.D. Ill. 1977) (A class action permits a large group of claimants to have their claims adjudicated in a single lawsuit. This is particularly important where, as here, a large number of small and medium sized claimants may be involved. In light of the awesome costs of discovery and trial, many of them would not be able to secure relief if class certification were denied.)

[12] *Shaver v. Trauner*, No. 97-1309, 1998 U.S. Dist. LEXIS 19648, *18 (C.D. Ill. July 31, 1998) (citation omitted).

[13] *Beasley v. Blatt*, No. 93 C 4978, 1994 U.S. Dist. LEXIS 9383, *13 (N.D. Ill. July 8, 1994).

## A.     The Standards For Judicial Approval Of Class Action Settlements

Public policy favors voluntary settlements of civil lawsuits.[14]   A proposed settlement of a class action should be approved where, as here, the compromise is fair, adequate, and in the best interest of the class members.[15]   In making its determination whether a settlement is fair, reasonable, and adequate, the court should consider the following factors in making its evaluation:  (1) the likelihood of plaintiff's success on the merits; (2) the extent of support from the parties; (3) the judgment of counsel; (4) the presence of good faith bargaining; and (5) the complexity and nature of the issues of law and fact.[16]

In applying these factors, the court neither substitutes its judgment for that of the parties who negotiated the settlement nor conducts a mini-trial of the merits of the action. Where, as here, the settlement was negotiated at arm's-length, the settlement enjoys a presumption that it is fair, reasonable and in the best interest of the class.[17]   Here, the settlement was the product of serious, informed, and non-collusive negotiations.[18]

---

[14] *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 979 (6th Cir. 2003).

[15] *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) (district court's inquiry limited to the consideration of whether the proposed settlement is lawful, fair, reasonable, and adequate).

[16] *Mangone v. First USA Bank*, 206 F.R.D. 222, 225-26 (S.D. Ill. 2001).

[17] *See, e.g., Hispanics United v. Village of Addison*, 988 F. Supp. 1130, 1149 (N.D. Ill. 1997); *State v. Nintendo of America, Inc.*, 775 F. Supp. 676, 680-81 (S.D.N.Y. 1991).

[18] *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983).

The court should reach an objective opinion as to the probabilities of ultimate success compared to the benefits obtained through compromise. As one court noted,

> [T]he determination of what amount of money constitutes a fair settlement is not a matter of mathematical science. On the one hand perhaps plaintiff's counsel could have obtained more for the class than a jury would award; on the other hand, it may be less. The court is in no position to substitute its judgment for that of honest and competent attorneys, who, after exhaustive discovery, have made a determination that the settlement represents a fair and realistic appraisal of their clients' chances of ultimate success.[19]

Finally, as a matter of public policy, "federal courts naturally favor the settlement of class action litigation."[20] As discussed below, application of the foregoing principles and factors demonstrates that the proposed settlement is fair, reasonable, and adequate and merits this Court's preliminary approval.

**B.     Evaluation Of The Proposed Settlement**

**1.     The likelihood of success in establishing liability and damages**

In assessing the fairness of the proposed settlement, a primary consideration for the Court is to balance the risk of establishing liability against the benefits afforded by the settlement.[21] When deciding to settle the class claims, Plaintiff recognized the significant period of time that would be required to engage in pre-trial discovery, summary judgment, and pre- and post-trial proceedings essential to continue this

---

[19] *Siegel v. Realty Equities Corp.*, No. 70 Civ. 4338, 1973 U.S. Dist. LEXIS 12499, *8 (S.D.N.Y. July 30, 1973).

[20] *Isby*, 75 F.3d at 1196.

[21] *See Mangone*, 206 F.R.D. at 225.

litigation.  Notably, to the best of Plaintiff's counsel's knowledge, no EFTA case has yet gone to trial, so there is no guiding authority on the likelihood of success for Plaintiff's claim at trial, or the amount of damages a jury would award for the violation alleged. Plaintiff considered the risks of summary judgment (with Defendant asserting affirmative defenses of, among other things, bona fide error) and a jury trial.  Finally, Plaintiff considered the likelihood that Defendant would appeal any judgment or adverse determination and the significant increase in time and expense involved with such.

Thus, by agreeing to settle the class claims as set forth above, Plaintiff has achieved a substantial benefit for the class members – each class member who sends in a valid, non-challenged claim form will be eligible to receive the maximum statutory damages available to an individual under 15 U.S.C.  §  1693m – without incurring additional litigation expenses, risk of loss, and consuming the judicial resources necessary to conduct a trial.   Approval of the Settlement Agreement avoids the uncertainty inherent in litigating several sharply contested issues concerning the interpretation of EFTA, the issue of whether Defendant's alleged conduct was willful, and the factors associated with assessing damages, as well as the risk that a similar, smaller or zero recovery would be achieved after a trial and appeal.

### 2.      The extent of support of the settlement by the parties

The parties to the Settlement Agreement have promised to cooperate to the maximum extent in: (1) seeking approval of the Settlement Agreement; (2) defending any appeal from the settlement; and (3) defending any collateral attack on the settlement or its

14

effects.  The parties have also agreed to cooperate with one another in the notice process.

### 3.    The judgment of counsel

The judgment of counsel also weighs in favor of approval of a settlement.[22]  Here, in light of the relief to Plaintiff and the class members being provided, class counsel concluded that the settlement is fair, reasonable, in the best interests of the class members and should be approved.  This conclusion is based upon, *inter alia*, class counsel's experience in litigating consumer class actions, assessing the likelihood of success on the merits, and assessing the available statutory damages that could be recovered.  Moreover, (a) the Defendant has agreed that any unclaimed settlement fund will be sent to charity, rather than revert to Unity One, and (b) the attorneys fees and costs will not be taken from any class recovery, additional factors supporting the propriety of this settlement.

### 4.    The presumption of bargaining in good faith

In addition to the presumption that settlement negotiations between and among experienced counsel have been conducted in good faith, this settlement was, in fact, the result of an arm's-length negotiation process.  There was substantial give and take by the parties prior to agreement on the terms of the Settlement Agreement.  Each salient term was negotiated independently and after an examination of the defenses raised by the Defendant in this case.

### 5.    The nature of the issues of law and fact

The issues of law and fact in this litigation also support approval of the proposed

---

[22] *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) (court is entitled to rely upon the

settlement because, as noted above, the amount of time and expense needed to litigate the class claims to conclusion would be complex, lengthy and expensive, especially when there is little or no guiding precedent for Plaintiff's claim.

### C.    Notice Is The Best Practicable

Rule 23(c)(2)(B) requires that class members be given "the best notice practicable under the circumstances…."  Rule 23(e)(1) requires that, in class settlements, notice be given "in a reasonable manner to all class members who would be bound by the proposal."  In this case, Defendant has affirmed that individual notice is not practicable because the individual ATM users cannot be identified.  Direct mail notice is untenable in this case because: (a) it is cost-prohibitive; and (b) it would require issuing subpoenas (and likely seeking compulsion orders) in many jurisdictions around the country to obtain the identity of class members from multiple financial institutions that issued credit/debit cards to class members.

Specifically, testimony obtained from banking personnel in other EFTA class actions has confirmed that typical ATM transaction logs identify the class members' ATM card transactions by a PAN, or "primary account number."  Certain digits of the PAN correspond to the particular financial institution issuing the bank card while other digits of the PAN uniquely identify the class member.  The digits corresponding to the financial institutions are called a BIN or "bank identification number."

With the PAN, while it is theoretically possible to locate many of the class

judgment of experienced counsel for the parties).

members by one of two methods, it is under the circumstances of this particular case impracticable.   The first method would be to obtain the name of the financial institution which corresponds to the bank identification number contained in the PAN.   [23]Assuming the financial institution corresponding to the BIN could be located, Plaintiff would still need to issue subpoenas to each of the dozens of corresponding banks.   Plaintiff would then have to request from each of these banks the account holder information (name, address and other contact information) corresponding to the PAN numbers derived for the more than transactions.   From this point, Plaintiff could create a database of the class members' addresses.   From the database, notice could then be sent to the addresses via first class mail.   Thus, while theoretically possible, under the circumstances, the above-described method is not the best practicable means of sending notice given that this laborious process is not guaranteed to produce successful results.   The second theoretical method of sending notice would be by a reverse interchange method.   Plaintiff's counsel has never used this method and it is therefore unknown whether it would be effective.   Essentially, it would require the parties to send a message electronically to the class members through the shared ATM networking system.

Therefore, targeted newspaper publication notice (covering the specific area in which the ATM is located), posted notice, and website notice is the best notice practicable under the circumstances.   Individual notice by mail is required where the class

---

[23] In the case of *Burns v. First American Bank*, Eduardo Monteagudo, Vice President of First American Bank swore under oath that no single comprehensive source of bank

member's address is known or is available through reasonable effort.  *See*, *e.g.*, *In Re General Electric Capital Corp.*, MDL 1192, No. 97 CV 3065, No. 97 CV 9005, 2000 U.S. Dist. LEXIS 4808, *16-17 (N.D. Ill. March 9, 2000).   It is respectfully submitted that, due to the third parties that would be required to even identify the banks who issued the ATM cards used, such a process exceeds the reasonable effort required.

The publication and website notice (*See Lyons Decl. at ¶5, Exhibits B and D to the Settlement Agreement*) describe in plain terms the premise of this lawsuit, the terms of the settlement, the deadlines for opting-out, objecting and submitting claim forms, the binding effect of the proposed settlement, the attorneys' fees being requested by Class Counsel, and the date, time and place of the Fairness Hearing.   It is therefore reasonable and appropriate notice.   The posted notice on the ATM at Issue will alert possible class members to the website notice and class counsel's contact information.

## CONCLUSION

For all the reasons stated herein, Plaintiff respectfully requests that this Court enter an order: (1) certifying the proposed Settlement Class for settlement purposes; (2) preliminarily approving all terms and conditions of the proposed Class Action Settlement Agreement and Release; (3) directing Notice to the Class Members; and (4) setting dates for submitting claims, exclusions/opt-outs, objections and a Final Approval Hearing.   A draft Preliminary Approval Order is attached to the parties' agreement as Exhibit E.

---

identification numbers exists in the financial institutions industry.

Dated this 2nd day of May, 2011.          Respectfully submitted,


By: s/Thomas J. Lyons
**LYONS LAW FIRM, P.A.**
Thomas J. Lyons, Sr., Esq.
Attorney I.D. # 65699
367 Commerce Court
Vadnais Heights, MN 55127
Telephone: (651) 770-9707
Facsimile: (651) 770-5830
tlyons@lyonslawfirm.com

**THE CONSUMER ADVOCACY
CENTER, P.C.**
Lance Raphael, Esq.
(*Admitted pro hac vice*)
180 West Washington, Suite 700
Chicago, IL 60602
Telephone: (312) 782-5808
Facsimile: (312) 377-9930
lance@caclawyers.com

**ATTORNEYS FOR PLAINTIFF**